## WYATT EPPS *v.* HOWELL HINDS.

Where a father gave his son money to pay his travelling expenses on his way to college, and also to defray his expenses while there, and the son in going to college stopped at a public inn, where the money was stolen from him:—

Epps v. Hinds.

*Held*, that a suit was properly brought in the name of the father against the innkeeper, to recover he money.

Where a traveller who stopped at an inn, had his trunk which contained money carried to the room into which the innkeeper had shown him to sleep for the night, and during the night his trunk was broken open and the money stolen : — *Held*, that the guest having conformed to the general custom in taking charge of his own trunk and its effects, the innkeeper could only relieve himself from responsibility by showing that he was only liable for the trunk and its contents when left at a particular place.

The responsibility of an innkeeper for the property of his guests, extends to every part of his house in which it is usual for such property to be taken; and his responsibility can only be limited by the innkeeper showing that there was a different understanding been himself and his guest.

IN error from the circuit court of Marshall county; Hon. Hugh R. Miller, judge.

This was an action instituted in the circuit court of Marshall county by Howell Hinds against Wyatt Epps to recover the sum of $185, which had been stolen from the son of Hinds whilst he was lodging in the tavern house or inn of Epps, in the town of Holly Springs, in September, 1850. Thomas Hinds, the son of plaintiff, testified that he stopped and lodged for the night at the tavern of defendant, and retired to the room shown him by the landlord (Epps), and had his trunk taken to the room with him; and after he went in the room he took his money out of his pocket, counted it, put it in his purse and placed it in his trunk, locked it, put the key in his pocket, and retired to bed. That some time in the night a stranger came into the room where he, witness, was lodging, and his entrance into the room waked up Hinds; the stranger went to bed in the room; that witness soon went to sleep again, and the stranger rose before witness did, and left town early that same morning. When witness rose in the morning he found his trunk lock had been broken and his money and purse taken, and he communicated his loss to Epps that same morning at breakfast. It was in proof that witness was, at the time the money was stolen, a minor, and it had been placed in his possession by his father, Howell Hinds, for the purpose of paying his expenses in travelling to and whilst at the State University at Oxford, where he was at the time going when he took lodging in de-

Epps v. Hinds.

fendant's tavern house. That there was no one in the room when witness went in and retired to bed. Witness offered J. C. Holland fifty dollars to pursue the man who had slept in the room with him the night the money was stolen, provided he got the money for witness, and he told Holland at that time he had lost $185. That witness slept in the same room the night after the loss, and no one slept in the room with him; and he, witness, has no acquaintance with any man by the name of James F. Beck, nor did he ever hold any conversation with Beck relative to the loss of the money, or see him in the room.

Defendant Epps then introduced the deposition of James F. Beck, (taken by consent,) who testified that on the night after the loss of the money by Thomas Hinds, he slept in the same room with Hinds, and in a communication with him after they had retired Hinds told witness to the best of his belief that he had lost only $80, or near that amount, but it had been so long ago that witness could not say positively what amount it was he (H.) said he lost. J. C. Holland, a witness for defendant, also testified that when Thomas Hinds called on him to pursue the man who slept in the room with him on the night the money was stolen, that he told witness it was $80 or $100 he had lost, to the best of witness's belief or recollection.

*D. Mayes* for appellant.

The second instruction given for plaintiff below is erroneous. It is this: " That if the jury believe from the testimony that the defendant kept a public inn or tavern in Holly Springs, at which the son of the plaintiff stopped and put up as a guest, on his way from home to college, and that the money with which the plaintiff had furnished his son for the payment of his travelling and collegiate expenses, was stolen from the locked trunk of the plaintiff's son, while he, with his trunk, was in a room in defendant's tavern, which had been assigned him as a sleeping apartment, they should find a verdict for the plaintiff to the amount of the money so stolen. And it can make no difference that the trunk of the guest containing the money was carried to his room by his directions unless it was done against the direc-

tions of the defendant. This instruction proceeds upon these ideas.

1. If a father furnishes his son with money to pay travelling expenses and college charges, it remains the father's money until expended accordant with the purpose for which it is furnished, and that without regard to the age of the son. I contend that it is the money of the son. That the money, when delivered to the son to be used for himself, is his own, and that he may sue for it.

2. That whether the lodger's directing the trunk to be taken from the room in which the tavern-keeper put it to his lodging-room, was such an assumption of the control as to place the property under his own supervision and care, and relieve the tavern-keeper from the care of it, was a question of fact and not of law; and it should have been left to the jury to decide whether he assumed the care of his property or left it on the responsibility of the tavern-keeper. The judge says, as a matter of law, that " it can make no difference that the trunk of the guest was carried to his room by his directions, unless it was done against the directions of the defendant."

In *Burgess* v. *Clements*, 4 M. & S., Bayley, J. says, " after a person has specially taken his property into his own care, it is but reasonable if he means to charge the innkeeper upon his responsibility, that he should apprise him of it." The true question is, Was the trunk under the care and control of the tavern-keeper, or guest ? It is plain that in this case, the tavern-keeper took one mode of proceeding for the safety of the property. The guest changed it, whether with or without the tavern-keeper's knowledge or acquiescence, does not appear. If under the care of the tavern-keeper, he is liable; if of the guest, the tavern-keeper is not liable; and whether under the control of the one or the other, is a mere question of fact which should have been left to the jury. *Burgess* v. *Clements*, 4 M. & S. 306; *Albin* v. *Presby*, 8 N. Hamp. 408; *Richmond* v. *Smith*, B. & C. 9; *Piper* v. *Manny*, 21 Wend. 282.

The fourth instruction should not have been given. It is not true in point of law, that to constitute negligence on the part

of the guest which will discharge the innkeeper, the guest must leave the thing stolen " so exposed to thieves as to tempt them to theft by the opportunity presented for stealing without the probability of being observed."

The fifth is objectionable in laying down the rule still more strongly than the fourth, that the negligence must be such as to " render it easy for a thief to discover and take the goods without danger of detection."

The eighth does not involve a question of law ; it invades the province of the jury by actually weighing the evidence, and deciding that the evidence of the defendant must yield to that of the plaintiff. As a general proposition of fact, the instruction announces a truth, but it is only fact for the jury, and not law for the court. Besides which it is not true as a fact, in cases where guests, *ex necessitate,* are admitted to prove the contents of their trunks, and where the object of introducing the conversation is to discredit the witness. The modification of defendant's instructions should not have been made for reasons already assigned.

*D. Mayes* for plaintiff.

*J. F. Cushman* for appellee.

It is a principle clearly laid down and well established in all the books on that subject, that an innkeeper is liable for all goods brought within his inn, or tavern, and a delivery of the goods into the custody of the innkeeper is not necessary to charge him with their loss, although the guest does not deliver or acquaint the innkeeper with them. It is not necessary to prove negligence on the innkeeper to make him liable, and his liability is not restricted to such things and sums as are designed for the ordinary travelling expenses of the guest. Story on Bailments, § 478, 479, &c.; *Calye's case,* 1 Smith's Lead. Ca. 148; *Cute* v. *Wiggins,* 14 Johns. 174 ; *Quinton* v. *Courtney,* 1 Hay. N. C. R. 41 ; *Berkshire Wool Company* v. *Proctor,* 7 Cush. 417.

An innkeeper is chargeable for the goods lost of his guest which were committed to his charge or care, unless the loss is

caused by the act of God or the common enemy, or the negligence or default of his guest, without any particular contract or agreement for that purpose; and if a servant is robbed of his master's money or goods, the master may maintain an action against the innkeeper in whose house the loss was sustained. Story on Bailments, § 480, 481; *Townson* v. *Havre de Grace Bank*, 6 H. & J. 47.

Where a horse of a guest at an inn was put into a stable which was very open, but had a bar to one door and a lock and key to the other, and the key was delivered to the servant of the guest, yet the innkeeper is liable for a horse stolen out of his stable, and it would have been the same had the stable been properly constructed. *Newsam* v. *Axon*, 1 McCord, 509.

If an innkeeper refuse to take charge of goods left with him until a future day, because his house is full of parcels, still he is liable to make good the loss, if the owner stop as a guest, and the goods be stolen during his stay at the inn, or while in the innkeeper's house. *Bennett* v. *Meller*, 5 Durnf. & East, 273, top 144.

An innkeeper is chargeable for the loss of the goods of his guest committed to his charge or care, unless the loss is caused by the act of God, or the common enemy, or negligence or fault of his guest. An innkeeper and a common carrier are regarded in law as insurers of property committed to their care or charge, and they can only limit their liability by an express agreement or notice to the loser before the loss takes place. 2 Kent's Com. (17th ed.), 758, &c.; 8 Barn. & Cress. 9; *Grennell* v. *Cook*, 3 Hill (N. Y.), 485; *Mason* v. *Thompson*, 9 Pick. 280; *Dwight* v. *Brewster*, 1 Ib. 53; *Peper* v. *Manny*, 21 Wend. 281; *Manning* v. *Wells*, 9 Humph. 740; *Sneider* v. *Geiss*, ·1 Yeates, 34; 12 Mod. 487; 5 Bacon, Abridg. (C.), 233.

It is evident from the facts of this case, that Epps has set up nothing to exculpate him from liability for the money stolen from his guest's trunk. The guest is not bound to communicate to the innkeeper that he has money on his person or in his trunk when he stops at his house. It is the duty of the innkeeper to know and see there are no thieves about his house, either as guests or inmates. He who stops at the house of an

innkeeper, for the time places the property he may have with him under the protection of the landlord, and if the innkeeper be not liable for the security from thieves of such property, he might rob his guest of all he had, whilst he was receiving pay to keep the guest and his property safe and secure under his roof.

The principles laid down in the elementary works on the subject of bailment, fix the liability of Epps, and many of the cases I have cited are much stronger in declaring the extent of the liability of innkeepers than the one at bar.

The conflict between the testimony of young Hinds and the two witnesses who testified for the appellant, is very slight. It is only as to the amount of the money lost; and whilst young Hinds swears positively that the amount taken from him was the same for which judgment was rendered, the other witnesses could or did not say positively what amount young Hinds told them he lost. Men are very apt to mistake when they attempt to repeat the language of another, and particularly as in this case, when their attention is not expected to be called to it again. That was a question of fact which the jury settled, and this court will not interfere with verdict.

Mr. Justice Fisher delivered the opinion of the court.

This was a suit brought by the plaintiff below against the defendant as an innkeeper in the town of Holly Springs, to recover the amount of money alleged to have been stolen from the son of the plaintiff, while a guest of the defendant in September, 1850.

The son's trunk was, at his request, taken at night, on retiring to bed, to his room. After arriving at the room he proves that he put the money which had been furnished to pay his travelling and collegiate expenses by his father in the trunk; that after retiring to bed, a stranger was brought into the room, and placed in another bed; that this stranger left very early next morning; that the son, after getting up next morning, discovered that his trunk had been, during the night, broken open, and his money, amounting to the sum of $185, stolen. These are the impor-

tant facts in the case, and are, in our opinion, sufficient to sustain the verdict found by the jury for the plaintiff.

It is, however, said that the money belonged to the son and not to the father, and that the suit should therefore have been brought in the name of the former. The son was merely invested with a discretion as to the expenditure of the money. It was the means provided by the father for the son's support while travelling and attending college, and the loss necessarily fell upon the party who was bound to furnish other means for the same purpose.

The next objection is, that the fact of the son's ordering his trunk to be taken to his bedroom, exonerates the innkeeper from liability for a theft committed in the room. The rule is directly the reverse, and so stated and recognized by the authorities referred to by the counsel for the plaintiff in error. The son by such act only conformed to a general custom, and the innkeeper could only relieve himself by showing that he was to be responsible for the trunk and what might be put in it, when left at a particular place. *Primâ facie* his responsibility for the property of his guests extends to every part of his house into which it is usual for such property to be taken. This is the general rule, which can only be limited by the innkeeper showing that there was a different understanding between him and his guest, in regard to the property of the latter.

Judgment affirmed.